*387 ORINION.
Korner, Chairman;
This appeal involves the deductibility of an alleged loss of a capital asset. The taxpayer contends it had a valuable contract which was terminated in the year 1919, and that, by reason of such termination, the contract became valueless and gave rise to a loss in that year. The taxpayer also contends that because it repurchased at par, in the year 1919, $1,000 of its preferred stock, which had been issued to one Simpson for assistance he had voluntarily rendered Turner in securing the contract mentioned, a further deductible loss of $1,000 was sustained. The total *388 alleged loss, if any, is therefore in the nature of an exhaustion of capital assets.
There is a conflict between the parties both as to the nature of the contract involved and as to its value. The taxpayer contends that, by the contract of November 23, 1916, it acquired from Turner and Van Wagenen, for $21,000 in stock, certain contracts and options which they had theretofore secured; that the second contract given the taxpayer in 1918, by the C. F. Mueller Co. was a part of and was made pursuant to the oral agreement entered into by and between Turner and Mueller in the fall of 1916, and was included in the contracts assigned to the taxpayer by Turner and Van Wagenen, and that, as the second contract with Mueller expired in 1919, the other contracts and options having expired or been exercised prior to that year, the assets acquired by the taxpayer under the contract of November 23, 1916, became exhausted in 1919, and that the cost thereof then became deductible. The Commissioner contends that the contracts with the C. F. Mueller Co. were in fact nothing more than subscriptions by that company to the capital stock of the taxpayer, and did not represent an asset to the taxpayer; that the evidence fails to establish that the taxpayer paid $21,000 for whatever it may have acquired under the contract of November 23, 1916; and that whatever it did acquire is either still used in the business or was exhausted prior to 1919.
Taking the most favorable view of the situation for the taxpayer, the contracts and options turned over to the corporation by Turner and Van Wagenen under the contract of November 23, 1916, were property and their cost was properly capital of the corporation. Therefore, the taxpayer was entitled to take deductions for the exhaustion of that property in the same manner as in the case of any other exhaustible property; that is, to spread such exhaustion over the life of the property and deduct an aliquot part in each year of its life. Appeal of Grosvenor Atterbury, 1 B. T. A. 169; Philip Henrici Co. v. Reinecke, 3 Fed. (2d) 34.
The Revenue Act of 1918 does not give a taxpayer the right to elect whether to take deductions in the years in which the facts justifying them occur, or to waive them and make later returns as if such facts had not occurred. The exhaustion for which deductions were not properly taken in the years in which it actually occurred may not be cumulated or lumped and taken in a later year when exhaustion is complete. Appeal of Even Realty Co., 1 B. T. A. 355; Appeal of Fort Orange Paper Co., 1 B. T. A. 1230. The Commissioner should, therefore, if not barred by the statute of limitations, recompute the taxes for each year on the basis of the real facts, even though the taxpayer may have previously ignored these facts to its detriment. Appeal of Even Realty Co., supra.
*389 In view of what we have said above, there remains for consideration only the value, if any, of the capital assets involved herein. This presents a more difficult question. The contract of November 23, 1916, provided that there should be issued to Turner and Yan Wagenen for their contracts and options 160 shares of preferred stock of the par value of $100 each and 1,000 shares of common stock of no par value, but on which a value of $5 per share has been placed by the taxpayer. The evidence in this case discloses, however, that the preferred stock in question was not in fact issued to Turner and Yan Wagenen, but that Turner discounted the promissory note of Henry Mueller, and with the proceeds thereof paid for the preferred stock in cash to the extent of $10,000 and that $4,000 in cash was paid in for preferred stock by others, making $14,000 preferred stock, of a total of $16,000 authorized, issued for cash by the corporation. At the same time Turner had the $10,000 of preferred stock (paid for by him with the proceeds of the Mueller note) issued to Mueller as collateral security for the performance of the taxpayer’s contract to furnish cartons to the Mueller Co.
The several contracts and options secured by Turner and Yan Wagenen prior to the formation of the corporation, namely, the Mueller Co. and Loose-Wiles Co. contracts, the Federal Paper Co. contract, and the option to purchase the factory, machinery, etc., are so closely entwined and wrapped up together as to become entirely interdependencia contributing to the success of the new corporation about to be launched. For this purpose each was useless without the other. The elements of value are not separable.. The failure of one would have been the failure of all. The Mueller and Loose-Wiles contracts were of no value to the taxpayer, unless it could secure the raw material, machinery, and a plant to manufacture the cartons. On the other hand, there is nothing to show that the options to purchase the plant, machinery, and raw mate-rails had any value to this taxpayer without contracts for the manufactured product. Hence, if there was any value in the various contracts and options it was because of the ability of Turner to synchronize and bring them together to form a whole. The real element of value was the business acumen, industry, and ingenuity of Turner, and without that acumen, industry, and ingenuity there would have been no value to the corporation in the contracts and options acquired under the contract of March 23, 1916. The Mueller contracts called for the sale by the taxpayer of cartons at market price less 10 per cent, which 10 per cent was to be applied to the payment of Mueller’s note for stock. The corporation still has its plant and machinery, which' were component parts of the value, if any, attributable to the agreement of November 23, 1916. No value has been established, or sought to be established, by the tax *390 payer for the plant and machinery or for the Loose-Wiles contract on the options to purchase raw material, which were likewise a component part of the asset transferred to the corporation by Turner and Van Wagenen. Furthermore, it is not apparent from the record that the contracts and options involved were turned in to the corporation by Turner and Van Wagenen for any stock except the common stock, for, as shown above, the preferred stock was paid for with cash and not with contracts.
As we have shown above, the record fails to disclose that the taxpayer paid to Turner and Van Wagenen for the contracts and options under consideration anything except 1,000 shares of the common stock. A value of $5,000 has been claimed therefor, but that value has not been established.
The taxpayer has, in our opinion, failed to show what of value, if anything, it paid for the contracts and options in question, and it therefore follows that it is not entitled to any deductions from gross income as allowances for the exhaustion thereof.
With reference to the stock repurchased from Simpson, we have held in the Appeal of Simmons & Hammond Mfg. Co., 1 B. T. A. 803, that the purchase by a taxpayer corporation of shares of its capital stock does not result in a realized loss. The taxpayer is therefore not entitled to deduct from gross income the purchase price of the stock in question.